## THE YULU. *

### BUSH et al. v. UNITED STATES.
#### No. 7280.

Circuit Court of Appeals, Fifth Circuit.
June 16, 1934.

W. Blair Lancaster, Jr., of New Orleans, La., and W. J. Gex, of Bay St. Louis, Miss., for appellants.

Alex C. Birch, U. S. Atty., and J. E. Meredith, Asst. U. S. Atty., both of Mobile, Ala.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

The Honduran motorboat Yulu was discovered by the master of the coast guard cutter Mahoning on October 28, 1932, at the position of 29° 09′ N. latitude 88° 50′ W. longitude, which was outside of the 3-mile zone but within 12 miles of the shore of the United

*Rehearing denied July 13, 1934.

States, within the limits of the New Orleans customs district. She was ordered to heave to by flag signals and the firing of blank shots, but changed her course and attempted to escape by proceeding away from the coast. She was pursued and captured after a chase of 3½ miles, still within the 12-mile limit. She was laden with a cargo of 1,227 sacks of assorted intoxicating liquor. Her master declined to produce a manifest and none was found on board after a search. She was seized and taken to Mobile, Ala., and there turned over to the collector of customs. Later, libels were filed against the vessel and cargo in the District Court for the Southern District of Alabama. Bush, master of the Yulu, claiming to be owner of the cargo, and Gough, claiming to own the boat, filed motions to dismiss the libels on various grounds, all to the effect that the court was without jurisdiction. The motions to dismiss were overruled, the facts were stipulated as above set out, and a decree was entered forfeiting the vessel and cargo, under the provisions of sections 584 and 585 of the Customs Act of June 17, 1930 (19 USCA §§ 1584, 1585). This appeal followed.

The contentions of appellants are these: (1) That the boat had been seized within the New Orleans customs district and should have been turned over to the collector of customs at New Orleans, to be proceeded against in the District Court for the Eastern District of Louisiana and that no other court had jurisdiction; (2) that the seizure had been made beyond the 3-mile limit; that the Republic of Honduras had entered into a treaty with the United States on December 7, 1927, which contained the most favored nation clause; that by reason of said clause citizens of Honduras were entitled to rely upon the provisions of the treaty of May 22, 1924, between Great Britain and the United States; that the government had failed to show that the Yulu was within one hour's sailing distance of the nearest shore and therefore the seizure was illegal.

■ .The case is on all fours with that of The Halcon (C. C. A.) 63 F.(2d) 638, in which we affirmed a judgment of condemnation, except that the contention is made that the seizure was illegal because of the British treaty. As to their first contention, appellants seek to distinguish the case of The Halcon on the ground that there the seizure was made beyond the 12-mile limit. It is argued that in this case the seizure was not upon the high seas and the seizing officer was not vested with discretion to take the vessel to Mobile. That contention is without merit. Al-

though the place of seizure was within the customs limits, still it was on the high seas.

The provisions of the treaty between the United States and Honduras of December 7, 1927 (article 7 [45 Stat. 2618, 2622]), relied upon by appellants, are as follows:

"Between the territories of the High Contracting Parties there shall be freedom of commerce and navigation. The nationals of each of the High Contracting Parties equally with those of the most favored nation, shall have liberty freely to come with their vessels and cargoes to all places, ports and waters of every kind within the territorial limits of the other which are or may be open to foreign commerce and navigation. * * *"

"Every such favor, privilege or immunity which shall hereafter be granted the nationals, vessels or goods of a third State shall simultaneously and unconditionally, without request and without compensation, be extended to the other High Contracting Party, for the benefit of itself, its nationals and vessels. * * *"

■ Treaties are to be construed as other contracts according to the intent of the parties. Wright v. Henkel, 190 U. S. 40–57, 23 S. Ct. 781, 47 L. Ed. 948. And interpretation by the executive department is entitled to great weight. Sullivan v. Kidd, 254 U. S. 433, 41 S. Ct. 158, 65 L. Ed. 344.

■ The history and intent of the British treaty of 1924 was extensively discussed in Cook v. U. S., 288 U. S. 102, 53 S. Ct. 305, 77 L. Ed. 641. What was there said need not be repeated. The decision in the Cook Case was that under the provisions of the treaty, which modified the customs laws, the United States was without authority to seize a British vessel laden with liquor unless she was within one hour's sailing distance of the coast. The Cook Case was decided January 23, 1933. It appears from a note to the opinion (page 109 of 288 U. S., 53 S. Ct. 307) that, in the interval of about nine years, fifteen other countries had negotiated similar treaties. Honduras was not one of these. In the course of the opinion the court said (page 120 of 288 U. S., 53 S. Ct. 311) that although the treaty modified the customs laws as to British vessels they continued to apply to the boarding, search, and seizure of vessels of all countries with which the United States had no relevant treaties. An examination of other treaties between the United States and the countries that had negotiated treaties similar to the British treaty of 1924 discloses that they contain the most favored

nation clause. Apparently it never occurred to any one that those countries would be entitled to the benefits of the British treaty because of that clause. This is tantamount to executive interpretation.

It is clear that the provisions of the Honduran treaty above quoted were intended to apply to legitimate trade and not to warrant a violation of the customs laws of the United States because of the most favored nation clause. The Yulu was not entitled to the benefit of the provisions of the British-American treaty of May 22, 1924.

The record presents no reversible error.

Affirmed.